# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2675 | **DATE** | 11/6/2001 |
| **CASE TITLE** | William Hampton vs. Larry G. Massanari | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [11-1] is granted and Defendant's motion for summary judgment [12-1] is denied. The case is reversed and remanded to the Commissioner for the award of disability benefits to Plaintiff, William Hampton, consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | NOV 07 2001 | date docketed | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 11/5/2001 | | |
| DK | courtroom deputy's initials | | 01 NOV -6 PM 3: 41 | date mailed notice | | |
| | | | | DK | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 2675 |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY G. MASSANARI, | ) | Magistrate Judge Morton Denlow |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

NOV 0 7 2001

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for a review of the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying Plaintiff, William Hampton

("Claimant" or "Hampton"), disability insurance benefits ("DIB") under the Social Security

Act ("SSA"). 42 U.S.C. § 416(i), 423(d). Hampton claims he has been disabled since

February 18, 1998.

Hampton seeks judicial review of the Commissioner's final decision finding that he

was not disabled. The matter comes before this Court on cross-motions for summary

judgment. The issue to be decided is whether substantial evidence in the record supports the

finding of the Administrative Law Judge ("ALJ") that Hampton was not disabled. For the

reasons set forth below, the Court vacates the ALJ's decision and remands the case to the

Commissioner for further proceedings consistent with this opinion.



# I. PROCEDURAL BACKGROUND

Hampton filed his application for Title II DIB on September 2, 1998 alleging a disability as of February 18, 1998. (R. 120-121). Hampton's DIB application was denied on October 29, 1998 because the SSA determined Hampton was capable of performing work related activities. (R. 90-93). On December 1, 1998, Hampton filed a request for reconsideration which was subsequently denied on May 4, 1999. (R. 95-97). Thereafter, Hampton requested a hearing before an ALJ. (R. 98). On September 8, 1999, a hearing was held and Hampton appeared with counsel and testified before ALJ Richard A. Pearson. (R. 29-87).

In his February 25, 2000 decision, the ALJ found Plaintiff was not disabled. (R. 14-20). Hampton filed a timely request for review of the ALJ's finding with the SSA's Appeals Council. (R. 9). On March 8, 2001, the Appeals Council denied Hampton's request for review, thereby making the ALJ's decision the final determination of the Commissioner. (R. 6-7). On April 16, 2001, Hampton filed this action requesting judicial review of the ALJ's decision.

# II. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v.*

*Shalala*, 997 F.2d 321, 322 (7ᵗʰ Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. Of Health & Human Serv.*, 983 F.2d 815, 816 (7ᵗʰ Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7ᵗʰ Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7ᵗʰ Cir. 1992); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815 n.1 (1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. THE DECISION OF THE ALJ

The ALJ concluded Hampton is not disabled and has not been disabled for any continuous period of twelve months. (R. 14). Hampton is a 47 year old man who completed 14 years of education, including two years of college. (R. 15). He has prior relevant work

experience as a freight car repairman and as a laborer. (*Id.*). Hampton has not engaged in substantial gainful activity since the alleged onset of disability. (R. 19).

The ALJ found that Hampton has the following impairments: a history of anemia and gastrointestinal bleeding, secondary to a peptic ulcer; hypertension, without end-organ damage; alcoholism in remission; and atypical depression. (R. 15).

Hampton was hospitalized at St. Francis Hospital from July 18 to 21, 1998 with a diagnosis of upper gastrointestinal bleeding, secondary to a gastric ulcer; anemia, secondary to the ulcer; chronic obstructive pulmonary disease; a Helicobacter pylori positive serology; and alcoholism. (*Id.*). Hampton underwent an esophagogastroduodenoscopy and a gastrointestinal panendoscopy with cauterization and was also treated with antibiotics. (*Id.*). According to one of Hampton's treating physicians, who treated Hampton since his hospital discharge, Hampton had no recurrence of his gastrointestinal bleeding, no significant weight loss, and there was no need to do any additional blood work or laboratory testing due to lack of symptoms. (R. 16).

At the request of the Administration, an internal medicine consultative examination was performed by Dr. Suresh Mahawar on March 18, 1999, and a psychiatric consultative examination was performed by Dr. Mahim Vora on March 26, 1999. (*Id.*). Dr. Mahawar's diagnostic impressions were consistent with Hampton's diagnosis at St. Francis Hospital. (*Id.*). Additionally, Dr. Mahawar diagnosed probable depression with a need for psychological evaluation and tenderness of the left sole, probably due to left

4

metatarsophalangeal arthritis. (*Id.*). Dr. Vora diagnosed Hampton with atypical depression and alcohol abuse. (*Id.*).

Hampton was also treated at Oak Forest Hospital of Cook County at various times since January 1998 as an outpatient. (*Id.*). In April 1998, it was noted that Hampton was out of medication for hypertension; however, no end-organ damage was noted as a result of hypertension. (*Id.*). In September 1998, Hampton's condition on examination was stated to be "good." (*Id.*).

The ALJ determined that Hampton had a severe impairment; however, his impairment did not satisfy the listed impairments in Appendix 1, Subpart P, 20 CFR Part 404. (R. 19). Furthermore, the ALJ found Hampton's allegations regarding his limitations not totally credible. (*Id.*). Specifically, the ALJ concluded Hampton's gastrointestinal problems and chronic obstructive pulmonary disease have been substantially stabilized and controlled. (R. 17). Additionally, the ALJ stated Hampton has had high blood pressure at times; however, there is no evidence of any end-organ damage and the cardiac consultation found normal heart functioning. (*Id.*).

An internal medicine specialist, Dr. David Abramson, testified at the hearing. (*Id.*). Dr. Abramson was concerned whether Hampton was still suffering from anemia because updated medical records were not obtained in time for the hearing. (*Id.*). The Oak Forest Hospital outpatient records were subsequently added to the record after the hearing and reflected normal red and white blood cells, hemoglobin and hematocrit counts. (*Id.*). Dr.

Abramson estimated Hampton was able to perform light to medium exertional work based on the evidence available at the time of the hearing. (*Id.*).

Dr. Benjamin Blackman, a psychiatric medical expert, also testified at the hearing regarding Hampton's mental impairments. (R. 18). Dr. Blackman concluded Hampton suffers from depression and his depression meets the requirements of Listing 12.04. (*Id.*). The ALJ disagreed with Dr. Blackman's conclusion. (*Id.*). Rather, the ALJ concluded Hampton experiences only slight to moderate limitations as a result of his depression and still has a wide range of social and daily activities, although slightly reduced. (*Id.*). The ALJ also found that Dr. Vora's diagnosis of atypical depression was the best description of Hampton's condition because Hampton did not exhibit the full range of symptoms of major depression. (*Id.*). Lastly, the ALJ concluded Hampton appeared fully capable of performing unskilled work in competitive employment. (*Id.*).

The ALJ found Hampton has the residual functional capacity to perform the full exertional and nonexertional requirements of medium work. (R. 19). A vocational expert ("VE"), Mr. Schweihs, was present at the hearing; however, he was never called upon to testify. (R. 31). Rather, the ALJ relied on the grid to determine job availability. (R. 19). The ALJ found Hampton unable to perform any of his past relevant work; however, based on Hampton's exertional capacity for medium work, age, education and work experience, the ALJ ruled Hampton not disabled. (R. 19-20).

# IV. ESTABLISHING A DISABILITY

In order to be entitled to DIB under Title II of the SSA, the claimant must establish a "disability" under the SSA. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). To establish a "disability" the claimant must show he is suffering from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last" for at least 12 months. 42 U.S.C. §423(d)(1)(A).

The Social Security Regulations provide a five-step process to determine whether the claimant has established a "disability." 20 C.F.R. §404.1520(a). The process is sequential; if the ALJ finds the claimant is disabled or is not disabled at any step in the process, the analysis ends. *Id.* In the first step, the ALJ considers whether the claimant is working and whether such work is "substantial gainful activity." *Id.* at §404.1520(b). If the claimant is working, the ALJ will find he is not disabled irrespective of medical condition, age, education, and work experience. *Id.*

If the claimant is not working, the ALJ will address step two: whether the claimant has an impairment or combination of impairments that is "severe." *Id.* at §1420(c). A "severe" impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, carrying out, and remembering simple work instructions, and using judgment.

*Id.* at §404.1521(b). The ALJ is to consider the combined effect of multiple impairments "without regard to whether any [single] impairment, if considered separately, would be of sufficient severity." *Id.* at §404.1523; 42 U.S.C. §423(d)(2)(B). If the ALJ finds the claimant does not have a severe impairment, the claimant is found not to be disabled and the sequential analysis ends. 20 C.F.R. at §404.1520(b).

If the ALJ finds the claimant's impairment is severe, the ALJ considers step three: whether the severe impairment meets any of the impairments listed in Appendix 1 of Subpart P of Regulations No. 4. *Id.* at §1420(c). If the claimant's impairment meets or equals any impairment listed in the regulations, the ALJ will find the claimant disabled.

If the impairment does not meet any listed impairment, the ALJ moves to step four. *Id.* at §1420(e). Step four involves a consideration of the claimant's "residual functional capacity" and the "physical and mental demands" of the past relevant work experience. *Id.* A claimant's RFC is what that person is able to do, despite his or her limitations. *Id.* at §404.1545. If the claimant is still able to perform work that he had performed in the past, the ALJ will find that the claimant is not disabled. *Id.* at §1420(e).

If the claimant's impairment is so severe that he is unable to perform past relevant work, the burden shifts to the Commissioner to show that the claimant, considering his age, education, past work experience, and RFC, is capable of performing other work which exists in the national economy. 42 U.S.C. §423(d)(2)(A); *Brewer*, 103 F.3d at 1391.

# V. THE ALJ'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The ALJ concluded Hampton was not disabled and, therefore, was capable of performing a full range of medium level work. Claimant raises two principal issues for purposes of appeal. First, Claimant contends the ALJ erred by failing to accept the Psychiatric Medical Examiner's testimony. Second, Claimant contends the VE present at the hearing should have been examined. Interwoven with the second argument is the issue of Claimant's hypertension and whether it was controlled.

## A. The ALJ Erred in Rejecting the Psychiatrist's Testimony and Substituting His Own Judgment for that of the Medical Expert

The ALJ is required to take into consideration all of the evidence in the record and discuss significant evidence contrary to his ruling. *Godbey v. Apfel*, 238 F.3d 803, 808-809 (7th Cir. 2000). Furthermore, the ALJ is precluded from substituting his own judgement for that of the medical expert. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). In other words, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Id*. Moreover, an ALJ's belief that the claimant's ability to do certain things is inconsistent with a diagnosis of depression is not a permissible ground upon which the ALJ may rely. *Id*. The Seventh Circuit Court of Appeals has explained:

> Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. [Claimant] is entitled to a decision based on the record rather than a hunch. The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture.

*Wilder v. Chater*, 64 F.3d 335, 337-338 (7th Cir. 1995).

At the hearing, Dr. Benjamin Blackman, a psychiatrist, was called as a Medical Expert ("Dr. Blackman"). Dr. Blackman was present at the hearing and questioned Hampton regarding his claim of depression. (R. 73-82). Afterwards, the ALJ inquired of Dr. Blackman regarding Hampton's diagnosis. (R. 82-86).

Dr. Blackman agreed with Dr. Vora, the psychiatric consultative examiner's diagnosis of atypical depression; however, Dr. Blackman believes the depressive disorder is so severe that it meets the requirements of Listing 12.04. (R. 82). When asked the meaning of atypical depression, Dr. Blackman explained:

> The word atypical is intended to mean a depression that does not satisfy various criteria in DSM, either DSM-III or DSM-IV. And they've chosen a word atypical to mean that this person has a depression but it doesn't fully satisfy all of the criteria. It is specifically not intended to be a degorative (Phonetic) term or a wastebasket term. It simply means that he truly has a depression but it doesn't satisfy all of the criteria of DSM.

(R. 82-83).

Dr. Blackman testified Hampton has anhedonia, early morning awakening, difficulty concentrating and satisfies the requirements for Psychiatric Review Technique Form 12.04 four as atypical depression. (R. 83).

Dr. Blackman also testified as to the Rating of Impairment Severity Form (R. 234). (*Id.*). Dr. Blackman rated Hampton's daily living activities as *moderately limited;* social functioning as *markedly limited;* and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere) as

10

*frequently limited.* (R. 83-84) (Emphasis added). Additionally, Dr. Blackman considered Hampton's experience in July 1998 to be an episode of decompensation. (*Id.*). Thus, Dr. Blackman determined that Hampton satisfied two of the B criteria and therefore met Listing 12.04(a) and (b). (R. 84-85).

Dr. Blackman believes the ulcer and the job loss triggered Hampton's depression. (R. 84). Dr. Blackman elaborated that Hampton "is preoccupied and angry," and he has "lost interest in all other activity." (*Id.*). Dr. Blackman also testified "it is probably true that he [Hampton] is much different now and isolated." (*Id.*). Dr. Blackman testified Hampton is not socializing and the anhedonia, or loss of interest, explains it. (*Id.*). Most significantly, Dr. Blackman explained that claimant's anger and depression would frequently interfere with his ability to concentrate in the simplest of jobs. (*Id.*).

The ALJ is required to discuss significant evidence contrary to his ruling; however, in this case the ALJ did not discuss any of Dr. Blackman's findings except to state "Dr. Blackman further expressed his opinion that the claimant's depression meets the requirements of Listing 12.04." (R. 18). The ALJ agreed with Dr. Vora's diagnosis that Hampton suffers from atypical depression. (R. 18). However, the ALJ disagreed with Dr. Blackman's conclusion of severity, finding rather that Hampton experiences only slight to moderate limitations as a result of his depression. (*Id.*). The ALJ based this conclusion on Hampton partaking in a "wide range of social and daily activities, although they are slightly reduced," occasionally socializing with friends, going to the park and movies, shopping for

himself and family and helping with chores around the house. (*Id.*). However when Dr. Blackman inquired as to several of the activities Hampton previously listed on the Activities of Daily Living Questionnaire (R. 147-150), Hampton did not confirm them. (R. 75-79, 84).

The ALJ also questioned Dr. Blackman regarding treatment for Hampton. (R. 85). Dr. Blackman's response was, without psychotherapy and drugs, Hampton is "withdrawn, anhedonic and the likelihood of a recovery is not good." (*Id.*).

It is impermissible for the ALJ to substitute his opinion for that of the disinterested expert witness psychiatrist. *Wilder*, 64 F.3d at 337-338; *Rohan*, 98 F.3d at 970. Furthermore, as in *Wilder* and *Rohan*, the ALJ improperly disregarded the most recent objective evidence of claimant's limitations submitted by Dr. Blackman. Therefore, the ALJ should have accepted Dr. Blackman's listing requirement for Hampton which results in a finding of disability with an onset date of July, 1998. (R. 83-84). Under these circumstances, the case is reversed and remanded to the Social Security Administration with directions that Hampton's application for benefits be granted. *Wilder v. Apfel*, 153 F.3d 799, 801, 804 (7th Cir. 1998).

## B. The ALJ Erred By Not Calling A Vocational Expert To Testify

Although this case will be remanded for a finding of disability, a second basis also exists for remanding the case by reason of the ALJ's refusal to call upon the VE to testify.[1]

---

[1] Although this issue is no longer decisive because the Court is remanding the case for a finding of disability, the Court will decide the issue in the event the Commissioner seeks an appeal to the Seventh Circuit. In this way, the Seventh Circuit will have all of the issues before it.

Hampton's exertional and non-exertional limitations may have significantly impacted his ability to perform a job. The VE's testimony would have clarified what jobs, if any, exist that Hampton is capable of performing despite his limitations.

The Commissioner bears the burden at step five of the sequential analysis to produce evidence of a significant number of jobs accommodating the claimant's RFC and vocational characteristics. *Knight*, 55 F.3d at 313. The ALJ may establish this evidence by applying the Medical- Vocational grid rules or by consulting a vocational resource. SSR 96-9p. The use of the grid rules in determining whether a claimant can perform light work is inappropriate where the claimant's nonexertional impairments are so severe as to limit the range of work he can perform. *Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994). If that is the case, the ALJ's disability determination is made through the "testimony of vocational experts who can indicate what work, if any, the claimant is capable of performing." *Herron*, 19 F.3d at 336-337, *quoting Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 684( 7th Cir. 1985); *See also, May v. Apfel*, 1999 WL 1011927 * 10 (N.D. Ill. 1999)(When a claimant suffers from both exertional and nonexertional impairments the ALJ may not be able to rely solely on the grid rules and may use a vocational expert).[2]

The grid rules in 20 C.F.R. Pt. 404, Subpt. P, App. 2, set forth rules that identify

---

[2]Exertional limitations affect the ability to meet the strength demands of jobs, such as sitting, standing, and walking. See 20 C.F.R. § 404.1569a(b). Nonexertional limitations relate to the ability to meet other demands of a job, including: postural limitations, limitations resulting from an inability to concentrate, and limitations from difficulty understanding or remembering. See 20 C.F.R. § 404.1569a(c)(1).

whether jobs requiring specific combinations of physical ability, age, education, and work experience exist in significant numbers in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b). When a claimant's RFC and vocational factors coincide with all the criteria of a particular grid rule, the rule directs a conclusion of disabled or not disabled. 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b).

The ALJ relied on the grid in Rule 203.28 of the Medical- Vocational Guidelines, Appendix 2, Subpart P, Social Security Ruling No. 4 in determining the Commissioner had met its burden. The ALJ found Hampton had a capacity for medium work and therefore applied grid rule 203.28 to conclude Hampton was not disabled. However, Medical Expert # 1, Dr. Abramson, found Hampton was capable of performing only light to medium work. (R. 70).

Dr. Blackman testified that due to Hampton's anger and depression interfering with his concentration, Hampton could not perform "even in the simplest of jobs now." (R. 84). Once the psychiatrist established Hampton's limitations performing the simplest of jobs due to his lack of mental concentration based on depression, the ALJ was required to call the VE to testify because the grid rules were no longer appropriate in determining whether Hampton could perform light to medium work where Hampton's nonexertional impairments were so severe as to limit the range of work he could perform. *Herron*, 19 F.3d at 336; *Allen v. Sullivan*, 977 F.2d 385, 389-90 (7th Cir. 1992) (holding the record viewed in its entirety does

not support the ALJ's finding that Allen had no nonexertional impairments).

Intertwined with claimant's argument that the ALJ should have called upon the VE to testify, is Claimant's argument regarding his hypertension. The status of Hampton's hypertension was not clear at the time of the hearing and it is still unclear as to whether the hypertension is controlled. When questioned about Hampton's RFC, Dr. Abramson testified "the only thing that would limit his ability would be his hypertension. And that has not been controlled. If you mean with the hypertension controlled then I would certainly feel he could do light work, possibly even medium type work." (R. 70). To the contrary, Hampton's examining doctor at Oak Forest Hospital, on May 13, 1999, diagnosed controlled hypertension and indicated Hampton should continue taking his medication and return in four months. (R. 249). Similarly, in July and September 1999, Claimant had blood pressure readings of 156/86 and 140/80 respectively.[3] (R. 251-52).

Regardless of Hampton's hypertension diagnosis, the case law directs the ALJ to call upon the VE to explain potential employment opportunities available to someone like Hampton who may be capable of performing light to medium work but is severely limited by nonexertional limitations. *Herron*, 19 F.3d at 336-337.

---

[3] Hypertension occurs when a person's systolic blood pressure is greater than or equal to 140 or when their diagnostic blood pressure is greater than or equal to 90. Current Medical Diagnosis and Treatment 444 (Lawrence M. Tierney, Jr. et al eds., 39th ed. 2000).

## VI. CONCLUSION

**Plaintiff's motion for summary judgment is granted and Defendant's motion for summary judgment is denied.** The ALJ is precluded from substituting his opinion for the Psychiatric Medical Examiner's opinion; therefore, this Court accepts Dr. Blackman's conclusion that claimant is disabled. Thus, **the case is reversed and remanded to the Commissioner for the award of disability benefits to Plaintiff, William Hampton, consistent with this opinion.**

**SO ORDERED THIS 6th DAY OF NOVEMBER, 2001.**

_____

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Daniel Galatzer
Post Office Box 2504
Glen Ellyn, IL 60138

Attorney for Plaintiff

Ann L. Wallace
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

Kathryn A. Beverly
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, IL 60606

Attorneys for Defendant

# United States District Court
## Northern District of Illinois
### Eastern Division

Hampton

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 01 C 2675

Massanari

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED the Plaintiff's motion for summary judgment [11-1] is granted and Defendant's motion for summary judgment [12-1] is denied. The case is reversed and remanded to the Commissioner for the award of disability benefits to Plaintiff, William Hampton, consistent with this opinion.

Michael W. Dobbins, Clerk of Court

Date: 11/6/2001

Donna Kuempel, Deputy Clerk